Please be seated. Your Honor, it's the first case of the morning, Fall 210-499, Kalsi Builders v. National City Mortgage. Masoudi and Fran Susan, on behalf of the Appellants, Timothy Wayland, on behalf of the Appellants, Peter Schwan. Gentlemen, are you both ready to proceed? Yes, Your Honor. You may proceed when ready. Thank you. Good morning, Your Honors and Counsel. My clients are unsophisticated businessmen. The builder was, in this particular case, Kalsi Builder, was a builder. And the builder and my clients wanted to invest in a property together with the idea of benefiting from the real estate market. Obviously, perhaps in hindsight, not the wisest idea. But they worked with a friend of theirs, whom they believed knew the business. That would be Mr. Kalsi, who was actually the son of the building agency that accompanied Kalsi Builders, and the plaintiff in this case. And they worked with him to assist them in the process of finding land and building a residence that they could then later sell for a profit. Who put together the original memorandum of agreement or contract, as it's called here in this case? It's our contention, Justice Hutchinson, that the contract was put together by Kalsi Builders, who was actually the son of the owner of the company that put the contract together. Because my clients didn't have the sophistication or the ability to be able to do that. And I find it particularly surprising that Mr. Kalsi that testified indicated that he had never seen this first page of this contract before, even though it had the logo of the company on the top of the contract. And there was testimony from my clients that they kind of rigged him about that particular logo when he came up with it as being kind of hokey. But he was the one that came up with it. And he was actually the one, in terms of the evidence that was presented, that when they went to him with this document that they took offline that he had sent them by e-mail, that he was in the midst of another job. And so his hands were dirty. So he's actually the one that told them what to fill in on the contract line. And so as he stood there, they filled in the writing on the first page. Counsel, interestingly enough, as I understand it, both sides argue for the existence of a contract. One side is arguing May 17, 2006, as a binding contract. The other side is arguing that the contract in October was a binding contract. With regard to the first contract, I mean, there are some issues that I think they're discussing. And really, bearing whether or not there was a valid contract, as I looked at the May 17th contract, it doesn't specify a price for the construction of the residence. How do you have a valid construction contract without a price for the construction? The court can construe the price from the draw schedule that was put together. There's a later contract that has the price in there, but it's my client's contention that they didn't put that price in there and that they don't know where that price came from, the $230,000. But if you put together the money that Mr. Calzai was to receive out of the closing, the $23,000, and you add together the draws that were paid out to him over a period of time, it's $230,000. But how does one, looking at the cash, know that the draw schedule is equal to the price? I mean, maybe the loan is just one source of the funding. Well, if we're looking at whether or not the court can arrive at some evidence of the meeting of the minds, I think that's the way the court does it, is that they can simply – you can see that the price of the contract for the construction of the land comes together. But isn't that normally considered a material term of a construction contract, the price? It is considered a material term, and I think that you can arrive at that material term exactly by the way that I just stated to you, Your Honor. What about the fact that the contract says it will be constructed in accordance with the plans, but when the contract was entered into, there were no plans? My clients are unsophisticated people. They were trying to enter into what they believed was going to be a construction of this residence, which the builder indicated to them would be approximately $200,000 to construct this residence, and the fact that there were no plans was kind of unknown to them. But even when the plans were done, three or four months later, in October, the builder didn't come to them and say, okay, well, now we have the plans, and my estimation of what I told you the cost of construction is going to be is different. The fact is the builder never, ever in this whole process that they were dealing with the builder came to them with any construction costs. The Exhibit 0 that they show you with their listing of construction costs was never – that came years later. It was never, ever given to my clients as to what the construction costs were. They had meetings. Nothing was ever generated from that meeting at the time of the – before the completion of the construction as to a specific amount of what construction costs were. But doesn't that underscore the problem? You're saying that your clients on one hand are saying we didn't know what the construction costs were, but then there's a contract here. Well, how can you have it both ways? It's not both ways, Your Honor. They're saying that they knew what the construction costs were because they had a contract with him. For what? And they complied with that contract by paying everything under the terms of that contract, not only the loan monies, but everything that they had to pay out-of-pocket, which they believed that they were paying for permits and other items that they had to pay for under the terms of the contract. So they pay those things readily out of their contract. So what did the trial court find with regard to the $46,000? What does that represent? That represents a quantum merit amount that the court found that my clients owed to the builder because the court determined that there were – there was neither a valid enforceable contract with regard to construction, nor did the court find that that second contract that – they had my client sign the management contract, which I suspect came about because there was a – they realized they underbid the contract. So they came forward with a management deal where they were supposed to get 10 percent out of the contract. Which your client signed, correct? My client signed because they testified that they wanted to get the contract – they wanted to get the house completed. And Mr. Calzai even said he wasn't going to complete the deal unless they signed that contract. They actually backdated that contract from the date that it was signed. It was signed in March, and they backdated it to October at the insistence of the builder when the construction began. Are the defendants disputing that the builder contractor expended more than this $230,000? They're not alleging that didn't happen. They're not alleging that didn't happen because they don't know. They didn't really get any construction costs until we got the receipts from – at the time of trial from Mr. Calzai as to what he claims that he put into the business. And so we don't have any contrary evidence to say that he did not put that construction cost into the property. But I think it's important to note that when he received that last draw at the completion of the contract, according to plans, as the contract says, he signed an affidavit that says I've completed all the work and I'm owed nothing. And he presented that affidavit to the bank to get his last draw. And I think that's telling as an admission against the builder as to the fact that the job is completed pursuant to plans and that he's owed no more money, no more funds. Would you agree that if he fined the existence of a contract on either of his documents that the quantum error would – the argument would fall? That is our point precisely, Your Honor. You can't have both. You can't have both. It's that language where if you have two bodies in one place, you can't have both in the same place at the same time. However, the trial court found there was no contract under either document, correct? That is correct, Your Honor. Tell us what's wrong with the October 1st, 2006 document. The October 1st, 2006 document is actually signed in a contract between a party that's not even a party to the lawsuit. It is actually by the individual owner of the company, not by Kawasaki Builders. And he – his son actually had him – had him sign that 10 percent management contract as a – as an individual. And that individual is not a party to the litigation. It was not a party to the litigation. Couldn't he be an agent of the company? He could have been, but they didn't include him in the lawsuit. You know, so if you look at the plaintiff – at the plaintiff parties, it's not Kawasaki – Hinder, I think, is his name, is the father. He's not a party in the – in the lawsuit, in the caption of the lawsuit. And that was our whole point before the – before the court is that you can't – you can't enforce a contract whether or not it's valid or not unless the party is part of the lawsuit. They didn't even amend it. When they amended their complaint, they didn't even include him into – into the litigation. When was the lawsuit filed? It was filed approximately two years after the completion of the construction. So I think the construction was August of 2006, and the lawsuit was filed in 2008, I think, June or July of 2008. It was within the timeframe that they had to file. So if one of the parties – they put the house up for sale, but it couldn't be sold, and one of the defendants and family moved in, that would be a date that should trigger the October contract if there is a management – if that 10 percent is supposed to kick in for some sort of value on the property? I suppose that would be a date that you could look at to do that. I just believe that that – that there are some problems with regard to that contract, both in the terms of the way it came about. In other words, we're not going to complete the job unless you sign this thing because they realize they're going to have shortfalls. And then they went ahead and backdated the thing. And, you know, this was a mechanic's lien foreclosure case. It was not a breach of contract case when it was originally filed. And the plaintiffs admitted in the litigation, surprisingly to all of us, the trial judge and everybody standing there because the bank was involved in it at that particular time, that while they didn't really mean for it to be a mechanic's lien case and that those pleadings in terms of those liens were false and were not true. And one of the liens is exactly – goes to that individual, not the company. It goes to the individual owner of the company. The other lien is filed by car side builders. But they virtually admitted to the court that that was a false lien. And that is one of our contentions, that we should have been entitled to – having defeated that particular claim, we should have been entitled to a hearing for attorney's fees based on our defense of and defeating of that. Of course, it requires the court to find that there was no just cause for them bringing that action. But I think they're – by their very admission that they were false pleadings and false liens. False in what regard? They didn't have – there was no money owed to them? What was false about it? If you look at the liens, the claim in the lien claims the October 1st contract, and it also claims the individual – for $40,000, approximately $40,000 of it, for the individual, Mr. Palzai. And he's not party to the lawsuit, yet they attach a pleading that says that he's entitled to that. Well, it's improperly filed. The phrase in the statute is filed without just cause or right. Correct. I think it goes to whether or not there's some type of a merit to the underlying issue of whether or not there's some kind of money is owed rather than technical pleadings. Well, how do we determine whether or not there's an underlying merit unless there's a technical pleading that gives it to us? They didn't even include the guy in the lawsuit. Yet they're equating a pleading saying that he's entitled to the money that's owed on that lien. He's putting a cloud on the title. You know, I think that's – It's a technical legal matter, isn't it, whether or not somebody's joined? Does that mean that money can't be owed to a party? You have the right to pull a mechanism if you believe you're owed money, but somehow the document's filed, the attorney files it without joining the proper party? Your Honor, I think we're all about technical legal things. And when we have to defend a pleading, I have to have a pleading that I can answer and respond to. And when they're admitting in open court that that was false and by mistake it was filed, you know, how does that give me the opportunity to defend against it? Isn't that different than whether or not there's any merit whatsoever to the underlying claim? It is different, but I think if we look at whether or not there's an underlying merit for the claim, we have to look at what pleadings they file. And if they have nothing on file, how can we arrive at that particular decision? And so the only decision that we can draw is if you have a meritorious claim, why didn't you present it? And they didn't. And I had to spend time and energy on behalf of my clients and expenses to defend it. The trial court found that it was not – the trial court did not shift the fees, correct? Did not – Shift the fees. That's correct, Your Honor.  Yes, Your Honor. In this particular case, were these liens – were they timely? Were they filed timely under the mechanics lien statute? They were filed on a timely basis. A separate counsel, then the counsel that tried the case actually filed the liens. And – okay, so they were timely, but were they filed after there had been an affidavit saying we've received our final payment? Oh, yes. For ongoing payment. The affidavit saying we've received our final payment and everything is complete occurred prior even to them obtaining possession or occupancy of the property, which occurred in June of 2006, I believe, or 2007. And then the liens were not filed until four months after that period of time within the time frame for them to be able to file their liens. Then the lawsuit was filed within a two-year time frame for them to file a lawsuit. I want to go back to the May contract. If the May contract represents a meeting of the minds and we can determine the price based upon the draws, why was there evidence that your clients were making personal payments out of their own personal funds to the builder? Because we do have some funds spent after each draw. Well, there's a $23,000 start, then private funds of $12,000, as I recall the facts. Then after a second or third draw, there was additional private funds. So what are those private funds? If you look at the second page of the contract, it says the general contractor is to pay all fees, excluding permits, and to secure insurance certificates for all. So my clients believed that they were paying for the permits because they were told by the individual that they had to put forth those funds to pay for the permits. And I think there's some testimony in there. I don't recall exactly, but he came to them on repeated occasions saying he needed more money to be able to do particular things. I think in the first instance where there was $12,000 paid out, he came to them and told them that he needed to get some money for the plans and specifications that he was trying to put together, because it took them about four months before they finally put all that together. Were there ever any change orders signed? Nothing ever signed. Nothing ever changed. And actually, the contract indicates that if there are any alterations or deviations to the original contract, there are to be signed writings with regard to that, and there were none. And the builder never came to them asking for any changes or modifications to this particular contract. In the presentation of my cross-examination and my examination of Mr. Kauzai, somewhat frustratingly, I asked him somewhat rhetorically, why would anyone build a house without knowing the construction costs? And his retort to me was, I don't know, go ask them why. The point is, no one ever, even unsophisticated businessmen, would go into this type of a venture to build a house not knowing the construction costs. They would arrive at the cost of construction. They had arrived at the cost of construction with Kauzai Builders, evidenced by this contract, working together with him and the bank. And that is exactly the point, Your Honor, is that with this valid contract, quantum merit cannot lie. One other thing that I'd like to point out, just kind of logically, is that what the builder had told them was the construction costs for the property would be approximately $200,000. That would be about 33 percent, 34 percent of the project. And that kind of makes sense. What they're asking for is, in the $307,788 that they're asking, that they were asking the court for, was approximately 53 percent of the property, of the value of the property. And if you add in the 10 percent commission deal, that's another $43,000, or 60 percent of what this whole project would be that the builder is saying, you know, I'm owed 60 percent of everything that you're going to be able to make on this if you're able to sell the property. And that just, you know, it just doesn't make sense that somebody would enter into that. We have a chance for rebuttal. Thank you. Thank you. May it please the Court. Counsel. My name's Peter Swann on behalf of the Lee Kelsey Builders Incorporated. As the Court has pointed out, there's essentially three issues in this case. The first issue being, is there a contract? The trial court found there wasn't a contract. And we make the argument that there should be a contract, and that contract should be the one dated October 1st, which was, in fact, signed the following March. Counsel, as a threshold matter, I think you're getting into it. In the course of your presentation, would you also then address why May 17th, 2006, is not a contract in addition to why you believe October 1st is? I will do, Your Honor. There's essentially two reasons why the May 17th contract should not be deemed a contract. It's labeled a contract but not deemed. It doesn't have the essential elements of a contract such as price. Further, the evidence is not contradicted that as of that May date, there were no plans for a home at all. So how do you set a price not knowing what you're going to build? There wasn't a permit. There weren't plans. There wasn't anything. It does not have a price. It does not even have the proper parties. It shows Mr. Harper and Kelsey as a subcontractor and the owners as a general contractor. So the parties are all screwed up in the contract. Then it doesn't have a price and it doesn't have a term such as when completion is going to be done or anything like that. Now, we have these loan documents, and if you look at the bottom of the loan documents that my client signed, they don't say owner or anything next to the owner's name. They say borrower. These are clearly loan documents. They have nothing to do with a contract between a contractor and an owner. Well, how do you answer his? And I think he has to acknowledge that generally speaking, you normally have the price in a construction contract. I don't think anybody would seriously dispute that's the norm, that's the standard, and you would normally have plans attached. But he seems to be saying, well, so what here? Okay, let's not exalt form over substance. He's saying you construct the draw. Look at the draw schedule. That jives with the amount owed. Therefore, it had to be the draw schedule equals the contract price. What's your response to that argument? Well, I don't think they're even arguing that the draw schedule equals the contract price. They want to add in another payment prior to the draw schedule and then say take that prior payment, then add the draw schedule, and that gets you to the contract price. So from a legal standpoint, what's wrong with that reasoning he's advancing? Well, my client would agree to it, and it was never in a contract signed by my client. And if we look at the totality of the facts of the case, there was a contract signed by the owners that allows for a determination of what compensation will be given to Kelsey Builders, and that's the 10 percent project management fee. And that is signed at a point after the parties all know what's going on, the plans are done, the work is going through. Had there been a contract already at that point, why would they be signing a contract, a document entitled contract agreement if they already had one? Why was it signed? I'm sorry? Why was it signed? It's October 1st. What was the reason for the October 1st? According to my client's testimony, he wanted to memorialize their agreement. It was essentially a cost plus. My client was building the house on a cost basis plus his 10 percent fee. So they were going along, and things were being added, and, you know, they're getting the finishes right, and whether they're going to have granite or no granite and everything going along. And it was getting late in the project, and he said, listen, we need to memorialize this. You know, I'm doing all this work, I'm expending money, and, you know, let's memorialize what I'm going to get compensated for. And the parties signed the contract. Does that agreement have all the elements of a binding contract? I think it has the elements for a binding contract for construction management. It has a fee. It says what he's going to do for the fee. It says also that Kelsey Builders may do work on its own, and they'll tell the owners what that work is. So instead of just subcontracting out everything, it specifically said that Kelsey Builders may do some work on its own and will give the owner the price for that work. And then the only term I thought might be somewhat ambiguous when we filed it was how ultimately he would determine the price. Now, they did say that the market value price would be determined by subtracting the lot price from the market value. And during testimony, both Mr. Masudi and my client said the market value was the sale price of the home. Well, unfortunately, in this situation, the home was only listed for a short period of time, and then the owners moved in, the title owners moved in, one of them, and took possession of the home with his family and, you know, it never got sold. So our contention was, well, you know, at the time you moved in, you had a listing price, and that should have been the price. So there was the trial court never actually determined the fair market value of the house. The trial court did not. We put on evidence. We put on Mr. David Leland, appraiser, gave the appraisal price at 580 for the home. The court did not use that in its quantum merit determination. Basically, it took as the price of the home the actual construction cost and said, okay, you know, what you've been paid minus the cost is your quantum merit recovery. We argued that, well, really that's not what quantum merit recovery is. It's the value given to the owner, and the value given to the owner should be the market price, and that's why we brought the appraiser in. Well, then let me ask you this. So if we were to find that there was a contract here under your argument in reviewing this of October 1st that determines the management fee is to be based at 10 percent, as I understand it, on the fair market value of the house, the trial court never really found the fair market value. What's supposed to happen then? Well, there is evidence in the record on fair market value. But the court didn't find it, correct? No, the court never made that specific finding in its ruling. I think because, A, it didn't find that there was a contract, so it didn't have to. I think if it found there was a contract, it would have had to make that determination. But there is evidence in the record of the fair market value. There's evidence in the record of the lot price, so we would take the fair market value, subtract the amount paid for the lot. That gives us $409,000. The 10 percent would be calculated on the $409,000, so we'd get the 10 percent of the fair market value minus the lot plus what was unpaid under the costs. Mr. Swann, you don't have a cross-appeal pending, do you? No, no, I do not, Your Honor. And so you have not raised necessarily before us the 10 percent management fee. Well, what I'm saying is if you are going to overturn the trial court's ruling and find that there is a contract, you have two choices. You have the October 1st one or you have the other contract. Those are the two ones that were presented to the trial court. We're saying if you're going to overturn it and you're going to find a contract, we believe you should find that the October 1st contract is the contract. And that would give – I mean, if that were the case, then you would argue that you're entitled to 10 percent of the value, although the value hasn't really been defined by the contract other than the subtraction of the lot. But now how are you going to try to accomplish your $46,000 in already expended fees? Because where are those going to happen now? Well, if you remanded back to the trial court for determination and found that there was a contract, you said now we're remanding back to the trial court for determination of what's owed under the contract. The trial court would make the determination, I believe, that we'd be owed the unpaid costs plus our 10 percent fee. And I think that's what the trial court would find because there is no contested evidence as to the costs of construction. There's no contested evidence as to what was paid. So we know what's not paid against the costs. There is a contest, though, that you were not actually owed those costs because there were no change orders and things of that nature. Right. But what they're saying is it was a fixed-price contract, so we only owe the fixed price and that's it. And why were there no change orders? Good question. Because it was a cost-plus contract. If it's a cost-plus contract and the owner says, I want granite instead of, you know, linoleum, it's just an increased cost. The price will go up and the 10 percent fee will be adjusted at the end based upon that increased cost. You don't need a change order. It's not changing a fixed-contract price. But didn't the October contract say that while the defendants would pay the construction costs or that was implied and they would do it from the loan, the actual documents to accomplish that had to be presented so that the defendants knew what they were paying? It says, if any changes to the project, change will be discussed with the owners. That's all it says. So nothing was memorialized, somewhat like the first contract, huh? Yeah. Under this agreement, they would just discuss it and they'd keep track of their price and they'd get 10 percent at the end on the costs. And they wound up doing quite a detailed accounting of their costs at the end. Under the first claimed contract, what they're saying is that it incorporates plans and specifications, which we know that were not in existence as of that time. And then they're saying that if there's changes to those plans and specifications, they have to be agreed upon by the parties to this contract. How was the agreed upon to be memorialized? It doesn't say in either of the agreements. The one that we assert just says they're going to discuss it with the owners, and this one just says they're going to agree upon it. There is no specific change order paragraph that says, you know, that it has to be signed by the parties or anything like that. Did the trial court make determinations to what costs were appropriate under any theory, additional costs? Well, the costs of construction were stipulated to at the trial. We had a book of all our receipts and all our costs and everything, and they stipulated that this, in fact, were our costs. So there was an agreement as to what was expended. Expended, correct. Nobody disputed what actually got spent. Right, right. And so from there, you make your extrapolations based upon if you believe there was a contract and what that contract is, or if you don't believe in the contract. The trial court did not believe there was a contract, but we believe that there is ample evidence in the record to show there was a contract. All right. Moving on to a couple other quick points, Steve. Would you also agree that if we were to determine that one of these documents constitutes a failed contract, the quantum merit theory of recovery would be out? Yes. I think you would have to remand to the trial court for determination of damages appropriate under the terms of that contract, whatever it would be. Let me just address a couple of little items, unless you have another question. I did, about the shifting of fees. I don't want the time to run out. Opposing counsel obviously believes that the court should have shifted the fees because, A, the mechanics lien claims were improperly filed, but, B, what do you make of his argument that one of the reasons he was is because the parties admitted that the plaintiffs who filed it were incorrect? There was some admission, he says, of improper filing by your clients. And I'll address that. There's two corrections I want to make to the record. One, we never said we weren't proceeding on a mechanics lien theory trial. What we said was we were not seeking a priority mechanics lien as against the bank. The bank has a mortgage on the property. We're not seeking to prime that mortgage, not claiming that our lien was superior to that of the bank's. To do that, we would have had to engage in essentially an enhancement argument with the bank. We would have competing appraisers. The costs would have been outrageous. It would have lengthened litigation, too. We believe there was equity in the home, so we were simply asking for a mechanics lien, not a priority mechanics lien. We did not attach the recorded liens to the complaint because we did file within a two-year period, which is all we really had to do to perfect the lien. The recorded liens would have been if we wanted to have this priority argument. And I believe there was an error when they recorded liens. They split the two liens into Kelsey Builder's lien and then a separate lien for Surrender Kelsey for some management work he did, and it was listed on the lien. And the way I read the contract, it was one contract with one party, and I believe that was the proper way to plead it. Like I said, those are technical things that a prior attorney looked at the relationship and said we're going to do two liens instead of one lien. So your argument is from a legal standpoint that doesn't mean that the underlying claim is defective? No, no. It goes again to contract interpretation. Was there one contract between both those parties and Kelsey Builder's? And if there was, there should be one lien, and we proceeded on that basis. We don't believe it. And, you know, the level for sanctions is whether the owner authorized the contractor to do work on the premises and approve the work. And if we have evidence of that fact, we're entitled in good faith to make a claim from a cancellation. I think we have it. Who signed the October agreement on behalf of your client? It was not signed. My client submitted it. They signed it, and he took it back. And, you know, we weren't – when he gave it to me, it wasn't signed. I didn't tell him to go sign it now. I, you know, filed it. I attached it to the – but he verified the complaint that this was, in fact, his belief that it was his contract. And a contract with Kelsey Builder. So he never, for whatever reason, ever signed it himself, but he prepared it and submitted it to the owners. So he never gave the defendants a copy? He gave them a copy of their signatures. Right, but not his. Not his. Not his. But he performed over it. I mean, he went ahead and performed. Isn't that sort of what's really going on here, is there was never any complete meeting of the minds under any of these contracts? Well, I mean, talk about material elements. That's an argument because he didn't sign it. Our argument is he prepared it, gave it to them. I mean, he doesn't even speak English, Mr. Serndip Kelsey. You know, he got – he and his son prepared it, gave it to the owners. They signed it. He was satisfied. He now had a signed contract. You know, he did – in his mind, then he kept building, and he performed under what he thought was his contract. What was he arguing about somebody else other than the owners signed it? What was – what did he make of that argument? So which one? I'm sorry, Judge. He was alleging that it wasn't signed by the proper party. Well, the owners omitted signing it. Mr. Masudi and Mr. Sims sued and omitted signing it. I mean on the plaintiff's part, on your client's side. Well, I think what they were arguing was that the improper party was we sued as Kelsey Builders Incorporated because we believed that was the proper party. And he's saying, well, it's really Serndip Kelsey of Kelsey Builders, and that should be construed as an individual contract. Well, we're saying Serndip Kelsey of Kelsey Builders meant that he was just acting for Kelsey Builders. That's how we – What did the signature line look like? It said Project Manager Serndip S. Kelsey, but of course it wasn't signed. It doesn't say – It doesn't say Kelsey Builders Incorporated. It doesn't say doing business as Kelsey Builders Incorporated. No. In fact, he would be a corporation that technically should have signed it by its president or something like that if he's going to get it right, but he wasn't drafted by an attorney. And he never really signed it. He just went forward and worked on it. Any other questions? No, thank you. Any final remarks? No, I believe we've treated everything that I asked, and thank you very much for your consideration, Your Honors. Thanks. Do you wish to reply? Just briefly, Your Honor. Justice Jorgenson, there was a complete meeting of the minds when they completed this contract, the contract that was for the cost of construction. And I go back to emphasizing that even unsophisticated businessmen are not going to enter into this type of action without knowing what their costs are. Well, isn't there somewhere some indication that it's going to be about $100 per square foot? That's what the builder testified he told them. Okay, but that's not any place in the documents. No, what they said that he told them is it would be about $200,000 because they looked at a number of other houses that this guy had built, and he told them the cost of construction was about $200,000. Were any of those documents related to the other houses attached to either the May or the October contract? No, they did not produce any of those contracts that they had on those houses, the reasoning being that they were apparently built for them and not for anybody else. So they didn't have any contracts that we could compare them to. As to the October 1st contract, one of the defects that I find in it, Judge Justice, is that I don't believe that there's any consideration for that particular contract. Counsel tells you, well, it was a cost plus 10% management fee contract. And I think that the way that it came about, the way that it was, if you want, negotiated, was almost a threat as if you don't sign this, I'm not going to complete this job. And he admits right on the record that I wasn't going to complete the job unless they signed this particular cost plus contract. Well, are you alleging that your client had some kind of duress and it made the whole arrangement invalid? Let's assume that's true, they were under some pressure. Have you raised the invalidity of the contract because of duress? We raised it in terms of a motion to dismiss, but that was denied. But we would also raise the issue that there's no consideration. There was simply no additional consideration. If you look at that particular, that October 1st contract, all it does is recites what they're going to do in the May contract. So there's no new consideration for that contract and there's no money paid out under that particular contract. So I believe that that is simply an invalid contract, that they did have a valid contract in that May 1st contract that these guys negotiated along with the bank and the builder to get to a meeting of the mines for that particular contract, and that that is what the court should address itself to rather than finding that it was an invalid contract and awarding monies under quantum barreling. Thank you. Thank you very much. I'll be in recess.